## AFFIDAVIT OF SPECIAL AGENT ROBERT MARSHALL
## IN SUPPORT OF A CRIMINAL COMPLAINT

I, Robert H. Marshall, being duly sworn, depose and state:

1. I am a Special Agent ("SA") with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"). I have been employed by HSI since February 2007. I am currently assigned to the Office of the Special Agent in Charge in Boston, Massachusetts. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia, where I received training in federal narcotics laws and preparing and executing search and arrest warrants. During the course of my employment with HSI, I have participated in numerous investigations relating to narcotics trafficking and smuggling. My training and experience in narcotics enforcement has included identifying cocaine, methamphetamine, heroin, opium, "MDMA" (ecstasy), and marijuana; investigating individuals who possess, sell and transport narcotics; and investigating individuals who conspire to transport and sell narcotics. Prior to my employment as a special agent, I worked as an Intelligence Operations Specialist for the DHS Office of Intelligence and Analysis in Washington, D.C. and as an Officer with U.S. Customs and Border Protection in San Francisco, California.

2. This affidavit is based upon information supplied to me by other law enforcement officers, my personal involvement in this investigation, and my training and experience. In submitting this affidavit, I have not included each and every fact known to me about the investigation, but instead have included only those facts that I believe are sufficient to establish the requisite probable cause.

3. On September 3, 2015, Judith del Carmen Rodriguez del Solano ("RODRIGUEZ"), DOB xx/xx/1990, arrived at Logan International Airport in Boston, Massachusetts, on JetBlue flight #830 from Santo Domingo, Dominican Republic. RODRIGUEZ, a citizen of the Dominican Republic, presented herself to the primary Customs and Border Protection Officer ("CBPO") for inspection.

4. RODRIGUEZ was referred to secondary inspection based on her relatively short length of stay in the Dominican Republic, and her rebooking of her flight a day earlier.

5. Once at the secondary inspection area RODRIGUEZ was interviewed by a CBPO. RODRIGUEZ, a resident of the Bronx, New York, could not provide sufficient detail in response to basic questions concerning her travel plans or destination in the Boston area.

6. The CBPO attempted to verify some of the information provided by RODRIGUEZ, e.g., her husband's phone number, hotel

reservations, names or phone numbers of contacts, but was unsuccessful.

7. The CBPO then commenced searching RODRIGUEZ's belongings, incident to her reentry into the United States, and observed a Samsung tablet computer. A review of the contents of the tablet revealed a screenshot containing an address in Dorchester, Massachusetts. The CBPO recognized this address as the location where previously seized drugs were to be delivered. The CBPO then referred RODRIGUEZ to this affiant for further questioning.

8. At approximately 11:00 a.m., I encountered RODRIGUEZ in an interview room in the Customs and Border Protection ("CBP") office and asked her if she spoke English. She responded that she speaks Spanish. I provided RODRIGUEZ with printed Miranda warnings in Spanish, which she read aloud. She stated that she understood the warnings, signed a wavier of her rights, and agreed to speak with me without counsel present.

9. I am a rated Spanish speaker, and conducted an interview of RODRIGUEZ in Spanish. RODRIGUEZ provided me with information concerning the purpose of her visit to Boston, her place of employment in Bronx, New York, and her purpose for traveling to the Dominican Republic. I then escorted RODRIGUEZ into the lobby of the CBP office and left her in the custody of

CBPOs. I then attempted to verify the information that she provided.

10. HSI Special Agent Jamison Wiroll and I reviewed the Samsung tablet computer that was in RODRIGUEZ's possession. We found additional images and text messages associated with a recent drug seizure at Logan International Airport, which resulted in the arrest of an individual transporting a substance believed to be cocaine ("Courier A"). Located on RODRIGEUZ's tablet were Courier A's itinerary and credit card information associated with Courier A's travel. We also located a Facebook conversation between RODRIGUEZ and another individual, whom she later identified as her husband, concerning her travel to Boston, which suggested that she was traveling with another individual.

11. At approximately 2:00 p.m., agents from HSI and CBPOs spoke with RODRIGUEZ again in a CBP interview room. They showed RODRIGUEZ the Facebook conversation located on the Samsung tablet, and she admitted that the purpose of her travel was to observe another individual traveling on her flight, later identified as Belkis Altagracia Rosario ("Rosario"), and to report whether Rosario successfully entered the United States or was apprehended by law enforcement.

12. RODRIGUEZ said that she knows an individual in the Dominican Republic ("Suspect B") who sends drugs into the United

States and sells drugs in the United States.  Suspect B asked RODRIGUEZ to go to the airport in Santo Domingo to ensure that Rosario boarded the plane, got off the plane in Boston, and successfully went through customs.  RODRIGUEZ confirmed that Suspect B paid for her flight to Boston and that Suspect B agreed to pay her "the rest of the money" when she completed the job.

13. RODRIGUEZ said that she did not know what Rosario was carrying, but that she knows that Suspect B prepares packages containing money, cocaine, or heroin.

14. Agents also located on RODRIGUEZ's tablet a photograph of Courier A, who was previously arrested at Logan International Airport carrying approximately 2.5 kilograms of cocaine concealed in her luggage.  When questioned about this photograph, RODRIGUEZ said that Suspect B sent her photographs of Courier A and asked her to locate Courier A because he wanted to know what happened to her and her bag.  Rodriguez further stated that Suspect B believed that Courier A robbed him.

## CONCLUSION

15. Based on the information set forth above, I submit there is probable cause to conclude that on September 3, 2015, RODRIGUEZ knowingly conspired to import a controlled substance into the United States from the Dominican Republic, in violation of Title 21, United States Code, Section 963.

Sworn to under the pains and penalties of perjury,

_____
ROBERT H. MARSHALL
Special Agent
U.S. Department of Homeland Security
Homeland Security Investigations

Sworn and subscribed before me this 4th day of September 2015.

_____
DAVID H. HENNESSY
UNITED STATES MAGISTRATE JUDGE

-